Good morning. May it please the Court. My name is Ryan Norwood. I'm an attorney with the Federal Defender, and I represent Freydys Martinez. I'd like to reserve about one minute of time for rebuttal, if I could. Okay. You may begin. This is a case that needs to be remanded for a hearing to determine whether equitable tolling is appropriate. My client is from Honduras. He doesn't speak English. He doesn't understand English. He maintains that he has the equivalent of a sixth grade education. It's evident from everything he's ever written by himself that he has little understanding of our criminal justice system and basically no understanding of the rules that govern state and federal post-conviction petitions. I think you've just described about half the people in federal prison. Well, let me describe a few more facts. Maybe not half, but, you know, a significant chunk. There are many who don't speak English. There are quite a few who don't have legal training and so on. The reality is it's hard to file a Federal petition. I mean, we, you know, I litigate these matters every day, and so does the State's counsel, and this Court hears these cases. But, you know, for these petitioners like Mr. Martinez who are in prison, I know that some of them are able to get things timely filed, but it's not easy. You know, he's incarcerated at a prison that's hundreds of miles away from the courtroom where he maintains he has no direct access to whatever library they have. I'm sorry. I should have completed my thought. I'm saying if these were sufficient to extend the at-the-deadline, I think a lot of people would qualify. Well, this Court has established that not speaking English in and of itself can be a basis for extending the at-the-deadline. It's a fact-specific inquiry. It depends upon not just that, but your diligent efforts and whether you have access to materials. But this is something that can be a basis for tolling. Likewise, the conditions at the prison can be a basis for tolling. Likewise, you know, the issues you have with your lawyer. I mean, Mr. Martinez never had a lawyer representing him while his clock was running on these post-conviction matters. He had a lawyer representing him on direct appeal whom he maintains wasn't communicating with him and who actually misled him about what was going on with that appeal, which is what started his clock. He also maintains that he didn't receive his file from that lawyer until sometime in early 2010. You know, so he's set forth about, you know, three or four independent reasons, you know, for getting tolling. And what we need to determine here is whether, you know, he can take out his case. The test extraordinary circumstances, right? Extraordinary? Yes, Your Honor. But I don't think that's a lot of as you point out, a lot of these circumstances are things that other Petitioners do have. Okay. A lot of these things are compelling, and I didn't mean to suggest otherwise. But you have to come up with something extraordinary. It's hard to come up with something extraordinary if you can say, look, there's a probably I mean, I don't know what the numbers are, but my guess is there's a substantial group of prisoners in I said federal court. I'm assuming state court is not that different, state prisons that meet all these criteria. And I'm not sure how we can come up with a rule that's something extraordinary if it applies to 10, 15, 20, 25 percent of the prison population. Maybe we can. I don't know. It's sort of a related concept of immigration law for exceptional circumstances. I don't expect you to know that. But it's a lot of what seemed very exceptional circumstances to individual people wind up applying to a lot of people. Well, I think I have two answers to that question. One of them is I don't think we should take extraordinary circumstances, which is a phrase that's used in some of the cases, too literally. I mean, it's true. Lots of people aren't able to speak English and aren't able to get access to materials. But this Court has recognized that that can be a circumstance that justifies tolling. I mean, just this year there have been two cases in Nevada where this Court has found that a Nevada attorney failed to notify, communicate with his client, file a petition or notify him of the status of his appeal. That's something that shouldn't happen, but it does seem that it's something that does happen, fortunately, fairly regularly. The second point would be is we're talking about a combination of circumstances here. So maybe there are other petitioners like Mr. Martinez who don't speak English. Maybe there are other petitioners who are incarcerated at a prison that has these sort of unique handicaps. Maybe there are other petitioners who are having issues with their lawyer and who are being actively misled about what happened. But when we take all of these circumstances together, then it becomes extraordinary. And we have a petitioner who just wasn't realistically able to get this petition filed within the deadline. But he was able to do a number of other things, and I think that we have to look at that, don't we? I mean, I don't – it's difficult to be in prison, one. It's difficult to be in prison and try to file something if you speak English. I think it's probably even more difficult if you speak Spanish. But when we look at what happened here, or primarily Spanish and have limited education, what happened here, he was able to get some translation help. And it looks like our case law says we have to look at that. And he did manage to file a number of things, you know, in the State. So I understand what you're saying. I think the issue we should probably be looking at is whether or not Mr. Bassett – what happened with he and Mr. Bassett and the fact that he didn't have his file the whole time during the period that he should have filed something. But let's take that in steps here, because, one, it looks like you filed something with this Court because there was an issue on whether or not he actually got notified of his appeal. Is that right? I mean, appeal being denied. There was this issue that had come up within the lower court order in the briefing. Mr. Martinez had represented in some of his letters that he had received a communication from the appellate lawyer in May of 2008, and it was pointed out that that would have been about the time the direct appeal was denied. I took over this case in the middle of the briefing. When I saw that, I went back and I looked at the file that we had received from the attorneys, and I found that there was, in fact, a letter, you know, basically said, enclosed, please find the order – you know, the order of affirmance from the Nevada Supreme Court dated, I think, May the 7th of 2008. So I thought the Court should know about that letter, so I provided it. What's interesting, though – So do you admit the letter was sent? I don't know. I mean, all I know is that the letter was in the file. It's – you know, you would normally assume that a letter in the file was sent. Whether it was received and understood is a different question. There's a second letter that was sent February 2009. It's at EOR 515, where – this is still within the limitations period, where Mr. Martinez is saying that he had subsequently communicated in some way with the attorney and was told that the Supreme Court had, in fact, not denied my appeal. And he says in that letter, which was written to another one of his lawyers, that based on that, he was going to halt all of his paperwork that he was planning on filing. And really, for the next year, if you look at the letters he's filing, he seems to be under the belief that his appeal is either still going on or he just doesn't know what's happening with it. But he refers to that letter a lot in subsequent – it appears that he refers to the May letter, which he keeps referring to. I mean, the district court made a point of noting that this letter was conspicuously not included in, you know, the papers, the exhibits that were submitted, but there were references to the letter that appeared to be the letter that Mr. Bassett sent informing him that his appeal was over. And I want to emphasize, Mr. Martinez wasn't trying to hide anything here. He referred to the letter, and I had spoken with him when I found it, and we both agreed that the Court should know about it. It's assuming – let's just assume he did get that letter. I mean, let's assume he was able to understand the letter. If there's still a problem if his lawyer is subsequently telling him or if he thinks his lawyer is subsequently telling him that, in fact, your appeal is still going on, because what we have here after that letter is a record of a person who thinks, for whatever reason, that his clock isn't ticking yet. I agree that there are some questions that should be worked out here, but the way to do this would be through an evidentiary hearing in the lower court. And if I could reserve the remainder of my time, I'd appreciate it. Thank you. We'll hear from the State. Thank you, Your Honor. Tom Gover from the Attorney General's Office representing the Respondents in this particular case. We initially filed a motion to dismiss in this case because we perceived a problem with the burden that the Petitioner has in bringing his petition in the first place. If you look at the petition itself on its face, the amended petition in EOR 68, it's clear on its face that this is an untimely filed petition, but there's nothing alleged in that petition at all as to what the circumstances of that was. As a result, I kind of had to do a bare-bones motion to dismiss, basically saying, you know, hey, it's your burden to establish how you're entitled to relief. This is just basic pleading here. And I cited Hinton v. Pacific Enterprises, which admittedly is an ERISA case, but it brings the point to bear here that the burden of alleging facts which would give rise to tolling falls upon the plaintiff. That burden does not arise only after a motion to dismiss. Rather, the plaintiff must plead with particularity the circumstances surrounding the concealment and state facts showing his due diligence in trying to overcome these facts. Now, this is in the ERISA context, but I think it particularly applies in Habeas because in Habeas also they have a burden of particularity that comes from Ed Putnam. Well, what about the fact that he didn't have his file the whole time? At the time that he filed his petition with the Federal court, he did have his file. He had his file starting January of 2010. And his Federal petition was filed in December of 2010, and the amended petition that was filed, that was filed by the Federal Public Defender's Office was filed thereafter. And so at this very basic level ---- But he didn't have it during the entire time. It might be wrong. He didn't have it the entire limitations period. Is that correct? He didn't have it during the entire limitations period. He didn't ask for it either. Well, let's talk about that, then. Okay. Because it looks like Gibbs and Spitzen say that if you don't have access to a legal file, that can constitute extraordinary circumstances. So ---- Continuing with my theme of a burden, he provided a declaration to this Court to support his statement that his entitlement to relief for the equitable tolling. Therein, there is no reference to any letter or any efforts to seek his file, to ask for his file. The record does show that, and I think Your Honor kind of tried to focus my colleague here, that maybe the issue here is what's going on between Mr. Bassett and Mr. Martinez. And there has been some discussion about other cases, Mr. Figler and Gibbs and in the Rudin cases about abandonment and how abandonment can be an exceptional circumstance, and that's something that we should look at. Well, did Mr. Bassett abandon Mr. Martinez here? From the evidence that was submitted, no. There's no way. Isn't there a support in the record that Mr. Bassett did not contact Mr. Martinez at all in 2009? In 2009, I believe I would have to add. Let me answer the question. Let's just say that there is. Okay. Just go along with it. Doesn't this entitle Mr. Martinez to at least an evidentiary hearing, especially combined with the fact that he didn't have his file during the entire limitations period? If we had an evidentiary hearing, we could find out more about this situation. But again, with my theme of burdens, the district court had enough that was in front of him, that was all presented by the petitioner to determine that there's no way that Bassett could have been, could have abandoned his client. He was appointed as the appellate attorney. He filed an appeal. He filed his direct appeal in 5-7. Well, the notice of appeal was filed 6-19-2007. On 5-7-2008, the order of affirmance came out. And on 5-23, Mr. Martinez talks about the letter that he received from his attorney. The letter we've been talking about, the May 2008 letter. The letter that we've been talking about. 2008 letter. He admits throughout his, throughout the record, we have a supplemental excerpt of record 18 where he talks about receiving a letter on May 23rd of 2008. And we have another letter when he's trying to lambaste his attorney in some self-serving statements in March of 2010. I haven't heard from you since May 23rd of 2008. Well, of course you haven't, because my job as an appellate attorney was completed. I represented you on a direct appeal. I filed my opening brief. You lost. I sent you a letter. So now you know. It's done. At that point in time, it becomes petitioner's ---- But let's just say I understand the petitioner's burden. But wasn't Mr. Bassett obligated under the rules of professional conduct to give the file to his, to Mr. Martinez? I mean, he violated that rule in not giving him his file, didn't he? If requested. There's not one letter ever. There is no right or automatic, I lost my direct appeal, I now must file a petition for red habeas corpus. There is no letter in the record, nothing ever submitted. So the rule says if requested? I didn't remember that, but it could. I just, are you sure the rule says if requested? I'll bet you dollars and donuts, but I don't have that. What I am sure of is that there is no request. The answer is you're not sure. Exactly. Exactly. But what I am sure is that there is no request from Mr. Martinez from March, or from May of 2008, all the way through March of 2009, asking Cedric Bassett for his record, for his file. And so this goes to diligence. We don't know if there was anything like that in the record, right? There might be such a letter. But this is the burden again. It is their burden to establish what he has done. Why isn't it up to the district court to develop the record on this point? Because. When dealing with a pro se, to say, look, do you have anything indicating you've asked for this, that when you got the file? Again, looking at burdens, if we look at page 56, this is the declaration. That was presented. Go for it. It's volume 2, but it's excerpt of records 54 through 56. All right. When the district court is presented with this petition, as I was initially was saying, the petition was bereft of any facts. I file my motion to dismiss. The first time we hear of any of the facts that would entitle Mr. Martinez to tolling, it's provided in this declaration. Okay. The court looks through this declaration, and I submit to you they see an allegation that one letter was sent from Mr. Martinez to his attorney. And it's on page 55, line 1. And it says, I also wrote Kedrick Bassett on March 27, 2009, requesting the same, being he wants his file, and explained the problems I was having with the law library and all those other things. Well, we also had the letter itself. If you look at 518 and 520, which is another volume, nothing in there says anything about what's the status of my appeal, I need my file, nothing. And so when the court looks at the claims that are presented to them, him, and says, well, they're going to bring a guy, maybe an attorney that's going to say I received a couple letters, that's the trial attorney, why would you talk to the trial attorney if you're trying to get something from the appellate attorney? And you see that there's one letter that is saying that he wrote the same letter. But in that letter to the trial attorney, I think Mr. Martinez, if we're talking about the same letter, is requesting help from her with communicating with Mr. Bassett. Which is silly, because there's no allegations in here at all about all the times that I tried to talk with Mr. Bassett, but I couldn't, and so I went and talked to my trial attorney. There's no letters that were presented from Mr. Martinez to Mr. Bassett. That's — and it's in stark contrast to the United States Supreme Court, Holland v. Florida, where we talk about the exceptional circumstances. And if you look at the United States Supreme Court case, it documents on this date the Petitioner wrote this letter, and his attorney didn't say anything. On this date — I mean, it's pages of all the communications that the Petitioner on the Holland case had attempted to contact the attorney, and we have nothing here. And so why we didn't have an evidence right here — He does have. You cite it on the year 55. He says, I wrote. I also wrote to Kendrick Bassett on March 27, 2009, requesting the same. Right. So what do we do with that? Well, what you do is you look at page excerpts of record 518 and 520, which was submitted by Mr. Martinez in a index of exhibits, and you look at that March 27th letter and you call BS on it, because you can look at that March 27th letter and it doesn't say anything about requesting my file. On January 28, March 5, 2009, I wrote my attorney, trial attorney Kathleen Hammers — again, my point, why would you contact a trial attorney — and asked for her assistance in obtaining a copy of my appeal documents. You look at that March 27th letter, 2009, and he's not concerned about his appeal documents. He wants to file something with the Honduras Embassy, and he doesn't like the law library lady, and there's not one mention of, oh, I need my appeal documents. And so I believe the court looked at the declarations, found that, you know what, there's all kinds of evidence that you have access to translators and things like that, that if you got a letter in May of 2008, someone could have translated that for you. You could have started the clock rolling on trying to get your stuff done. But there was plenty of evidence that he had access to translators. He had all kinds of access to the courts. That was his other complaint about, you know, hey, I was in the hole for X amount of time, and we didn't need to have an evidentiary hearing on that, because basically, you know, you had plenty of time within the period that you could have filed your thing timely. And the concerns about trial counsel, I don't even think they rise to the level of any misconduct on the part of appellate counsel, much less the extraordinary circumstances that we require for in Holland and in Gibbs and in Rudin. And so I would submit it on that. I'm way over my time now. I just have one quick question for you. On the motion to correct and supplement the record with the letter that Mr. Norwood filed, what was your position on that? I didn't file an opposition because I credit Mr. Norwood, his candor to the court. It really makes my case. So do you have any objection to it coming in under Rule 10e or coming in at all? Absolutely no objection, Your Honor. The matter is before the court de novo. I figured, you know, it's an extra piece of evidence that I think illuminates the relationship between Mr. Martinez and his attorney, and I have absolutely no objection to that letter coming in. Okay. If I could briefly address this issue of burden. I'm not aware of any case that says that a petitioner in his initial petition has to make out his case for equitable tolling. Timeliness is a defense that the State has the burden of raising. When they raise it, then the petitioner can respond, and that's what we did here with the proffer and the declaration and all these many letters. So what do you have when all is said and done? I'm sorry, Your Honor? When all is said and done, what do you have? What we have here is a case that at least can't be conclusively determined without a hearing. That's the standard we have to apply here. We conclusively determine that he doesn't get equitable tolling, and all I'm saying is that this is a case that needs to be remanded for a hearing so we can sort out all these disputes that we have. Well, but what do you have alleged? I mean, what's your strongest case? He alleges that he couldn't file his petition on time due to a confluence of a number of extraordinary circumstances, including the conduct of his attorney, his inability to speak English, the conditions at his prison. There are no other questions. I'll submit the case. Okay. Thank you. The case is argued. We'll stand submitted.
judges: Kozinski, Rawlinson, Murguia